Filed 8/6/21  P. v. Lopez CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>MARIO ARMANDO LOPEZ,<br><br>　　Defendant and Appellant. | D078176<br><br><br><br>(Super. Ct. No. SCS250943) |

APPEAL from an order of the Superior Court San Diego County, Francis M. Devaney, Judge.  Reversed and remanded with directions.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, Mario Lopez and four other inmates of the County jail savagely beat and tortured an elderly inmate to death.  The inmate's offense: he was a convicted child molester.

In late 2013, a jury convicted Lopez of first degree murder (Pen. Code,[1] § 187, subd. (a)).  He was also convicted of torture (§ 206).  In 2014, Lopez was sentenced to an indeterminate term of 28 years to life in prison.

Lopez appealed and this court affirmed the judgment in an unpublished opinion, *People v. Lopez* (Jan. 28, 2016, D065801).

In 2019, Lopez filed a pro. per. petition for resentencing under section 1170.95.  Lopez claimed he was convicted on a felony murder theory or a theory of natural and probable consequences and that he could not be convicted under current law.  After receiving briefing and reviewing the record of conviction, as well as this court's opinion in the original appeal, the trial court denied the petition by written order finding the evidence demonstrated Lopez was the actual killer.

Lopez filed a timely notice of appeal.

In his written order the trial judge stated:

> "On November 6, 2013, after a lengthy trial, the jury found Petitioner Mario Lopez guilty of the crime of murder, in violation of Penal Code section 187(a), and further found the murder was Murder in the First Degree, not guilty of conspiracy to commit murder, and guilty of the crime of torture, in violation of Penal Code section 206.  Petitioner subsequently admitted to three prior prison allegations, and on March 14, 2013, was sentenced to 28 years to life in state prison.  On January 29, 2019, Petitioner filed the instant Petition for Resentencing per Penal Code section 1170.95, contending that he 'could not now be convicted of 1st and 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019.'
>
> "Penal Code section 1170.95 allows an individual convicted of first or second degree murder under either a theory of felony murder or murder under the natural and probable consequence doctrine to file a petition to have his

---

[1]     All further statutory references are to the Penal Code.

murder conviction set aside. In order for the court to issue an order to show cause on the petition, which would shift the burden to the prosecution, a petitioner must first make a prima facie showing that three requirements are met: '(1) A complaint, information or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder; and (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (§ 1170.95, subd. (a).)

"The amendments to Penal Code section 189 restrict the felony murder rule and only impute liability for felony murder if, among other things, the defendant was 'the actual killer.' A petitioner convicted of first degree murder who was the actual killer does not get the benefit of the amendments to the statute. In this case, the charging document, jury verdict and opinion of the Court of Appeal all indicated that Petitioner was the actual killer. This Court was preassigned this case for all purposes and presided over the preliminary examination, pre-trial motions, jury trial and post-trial motions, and is thus intimately familiar with the facts of this case. The evidence presented to the jury and upon which it returned its verdict was very clear that Petitioner was the actual killer of the victim in this case. The initial assault was admittedly begun by Petitioner's co-defendants, but Petitioner, in a particularly gruesome scene, emerged from the jailhouse shower soon thereafter and viciously and methodically kicked and stomped the defenseless victim to death. Petitioner was undeniably the actual killer in this case. Petitioner has presented no evidence to the contrary.

"For those reasons, the Petition is hereby denied. Petitioner has not made a prima facie showing that he is entitled to relief.

3

"IT IS SO ORDERED."

Lopez contends, and the Attorney General agrees, the trial court engaged in impermissible fact-finding based on the judge's familiarity with the evidence at trial. This is a close case for us, as the offense outlined in our prior opinion was horrendous, and Lopez was apparently the principal antagonist. However, several theories of liability were provided to the jury including felony murder. We are satisfied the exact nature of Lopez's participation can only be resolved by weighing evidence and finding the facts. As such, the court erred in denying the petition at the prima facie stage. The court should have issued an order to show cause (OSC) and conducted an evidentiary hearing. Therefore, we will reverse the order denying Lopez's petition and remand the case to the trial court with directions to issue an OSC and conduct an appropriate evidentiary hearing.

STATEMENT OF FACTS

We will adopt the statement of facts from our prior opinion. (*People v. Lopez, supra*, D065801.)

"In July 2011, Lopez was a prisoner being detained at the George Bailey Detention Center and was known in the prison by the moniker 'Evil.' Prison personnel had made Lopez the 'captain' of the medical unit where he was being held, and inmates in the unit followed his orders without question.

"[R.] Hartsaw was also a prisoner at Bailey, and, on the evening July 17, 2011, Hartsaw asked a correctional officer to be moved from his then current unit to another unit. Later that evening, a correctional officer placed Hartsaw in the medical unit and asked Lopez to help Hartsaw find a bunk. Lopez agreed. At some point, Lopez learned that Hartsaw had been in protective custody and that he was a convicted child molester.

4

"A few hours after Hartsaw was placed in the unit, Lopez and a number of other inmates lured Hartsaw to an isolated area of the unit, and, shortly after guards had passed through the area, Lopez and the other inmates spent 30 minutes punching, kicking, and stomping Hartsaw to death. Toward the end of the assault, Lopez circled Hartsaw and repeatedly jumped on his genitals, limbs, and torso, causing Hartsaw's body to bounce 'like a trampoline.'

"After the beating was over, and at Lopez's instruction other inmates dragged Hartsaw back to the floor near his bunk and placed his body in a position so that it appeared as if Hartsaw had fallen from his top bunk. Lopez also instructed the other inmates to clean up the area where the beating had occurred; while they were doing so, Lopez took a shower and sang 'loudly and happily.'

"Approximately 20 minutes after the beating was over, an inmate alerted guards that Hartsaw was down. Emergency personnel who responded were unable to resuscitate Hartsaw. A medical examination disclosed Hartsaw had suffered 18 rib fractures, 32 facial injuries, multiple facial fractures, two skull fractures, a fractured sternum, numerous internal injuries and bleeding.

"Following Hartsaw's death, Lopez sent two notes or, in prison parlance, kites, to other inmates. One kite stated Lopez had already given 25 years of his life to the state, and it looked like the state might get the rest because Lopez was now facing murder charges. The kite stated: 'That fool was also a P.C.,' which was a reference to the fact Hartsaw was in protective custody and therefore presumably a child molester. According to Lopez's kite, Hartsaw showed Lopez paperwork which established that Hartsaw had been convicted of child molestation. The kite further stated Lopez 'took care

5

of a fuck'n chomo [child molester] that ain't gon hurt kids no more.'  A second kite set forth Lopez's hatred of child molesters and stated that many 'who no do got respeto what I did.'  The kites were signed 'Evil.'

"Lopez also sent a codefendant's girlfriend a letter in which he stated that he was sure her boyfriend told her what had happened and 'let's just say "them people" aren't allowed, sabes?' "

DISCUSSION

Section 1170.95 creates a process by which a petitioner who was convicted of murder on a theory of natural and probable consequences or felony murder can seek resentencing to take advantage of the changes made to sections 188 and 189 by Senate Bill No. 1437.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843.)  Section 1170.95, subdivision (c) provides:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

At the beginning stage of the process, the court must determine if the petitioner has made a prima facie showing of eligibility for relief.  If so, the court must issue an OSC and hold an evidentiary hearing.

The trial court may dismiss a petition if the court determines without factfinding that the petitioner is ineligible for resentencing as a matter of law.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 332-333, review granted

6

Mar. 18, 2020, S260493.) At such an early stage in the process, the court may consider readily available facts but may not engage in factfinding or weighing of evidence and making credibility determinations. The process of finding facts must follow the issuance of an OSC and setting an evidentiary hearing. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 982; *People v. Duchine* (2021) 60 Cal.App.5th 798, 816.)

In this case the trial court, "familiar with the evidence," made a finding that Lopez was the actual killer, and thus ineligible for resentencing. The difficulty with the finding is that the jury was also instructed on felony murder. Lopez was one of a group of inmates who attacked the victim. While it is entirely possible that an evidentiary hearing will result in a finding Lopez is not eligible for resentencing, such determination cannot be made based on the crime or the record of conviction. Rather, the court will have to consider the evidence regarding Lopez's participation in the offenses.

Lopez contends and the Attorney General properly concedes the court erred in denying the petition without an evidentiary hearing. We will accept the parties' agreement.

## DISPOSITION

The order denying Lopez's petition for resentencing under section 1170.95 is reversed. The matter is remanded to the Superior Court with directions to issue an order to show cause and conduct an appropriate

7

evidentiary hearing as required by statute. We express no opinion as to the appropriate outcome of such hearing.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.